If you're representing Wal-Mart, I'd like to reserve five minutes for rebuttal. Whatever's left on the clock. Thank you. The district court applied incorrect legal standards when it held that Rule 23b-2 as opposed to Rule 23b-3 applies in this case because monetary relief plainly predominates. Could you raise your voice just a little bit? Yes, Your Honor, certainly. And I'll just repeat what I said. We respectfully submit that the district court committed legal error when it applied Rule 23b-2 as opposed to Rule 23b-3 because monetary relief predominates here. Rule 23b-2 was intended to serve in cases where injunctive relief is the core form of relief. And the advisory committee, when it developed Rule 23b-2, anticipated that the class action certified under that rule would be naturally cohesive, that the relief would basically automatically apply to the class as a whole and it would be very simple and straightforward in terms of deciding whether to certify a class. Are you contending that the back pay as well as the punitive damages is a problem with regard to B-2? We are in this case, Your Honor, because of the nature of the claim. Has any court so held? Courts have held that depending on the nature of the back pay, but they have – courts have authorized back pay under B-2. And the whole Allison line of cases accepts back pay? Back pay could, in certain circumstances, be allowable. In Allison, the court held that the class could not be certified at all because it included not only back pay claims, but punitive damages claims as well. And compensatory damages? Primarily compensatory damages. It didn't include compensatory damages. That's correct, Your Honor. Which this case does not. This case does not. The plaintiffs forfeited the compensatory damages, Your Honor, in part, I think, to try to certify a class, and I think that demonstrates one of the conflicts and one of the problems with the class. Is that the same thing as waived? It's essentially the same thing as waived, Your Honor. Waived? Forfeited sounds like they got punished. Correct, Your Honor. Waived. And in fact, the named plaintiffs retained their own compensatory damages, it appears, while waiving the class members' claims for compensatory damages. But the punitive damages and the back pay clearly predominate over injunctive relief in this case. The plaintiffs' claims would seek billions of dollars of highly individualized damages. If this were just an injunction case, would their proof of policy and effects, would you then be objecting to that? Is it only because it's at the damage phase that you get disturbed? Your Honor, I think if it were simply an injunctive case, then I think Rule 23b2 could apply, but we would still have an issue here that's very important, which is the standard for evaluating the evidence. But otherwise, you don't object, aside from looking at a very, taking a harder look at whether the battle of the experts, how it ought to be resolved, you would go along with their effort to prove a policy and its ill, its disparate effects in an injunction-only case? I think it would still raise problems, Your Honor, because, again, I guess theoretically we would not say that was a problem under b2. We have real problems with it here because of the nature of the claim. Let me ask you a question that has to do with how, in your mind, we should decide the question of what predominates. If this were an employer that had 1,000 employees and the amount of punitive damages sought was proportionately less, then you couldn't argue that the punitive damages predominate just because they're big. What else is there about punitive damages here that would distinguish it from the ordinary case that seeks an injunction-backed pay in punitive damages? Your Honor, that's correct. It's not simply because the award that is being sought is big. It's not simply because the class is big. It's because of the nature of the claim in conjunction with those other factors. So if there was a claim where you had a clear practice, if there was a policy that said women will be paid a dollar or less, and there was a finding that that was violated, which it clearly would be, and there was 1,000 people in the class, there could conceivably be a proceeding, one under Teamsters, and then a second proceeding where there would be claims for individual relief would be adjudicated under Teamsters, and a punitive damage award could, I think, conceivably be rendered that would be fair and that would be proportionate and that would conform to due process. So I think it's possible. This claim, though, because of the way it's framed, decentralized decision-making across every store, across every job position. Let me make sure I understand. There are three components to the remedy they seek, right? They seek a what essentially is injunctive relief. They seek punitive damages, and they also seek back pay, right? Correct, Your Honor. All those things are in the case. And I understand the injunction, how that works. And you've just explained, Judge Graber, about the punitives. Talk to me about the back pay. Is that an individualized decision, or how is that? It is in this case, Your Honor. There are some back pay cases where the entitlement to back pay would be either defendants waive the second. Let's talk about this case. In this case, Your Honor, the back pay would have to be a determination whether a particular class member was at a store where she was paid less than her male counterparts, and, therefore, whether she was eligible. Let me continue. Yes. I don't need you to run a trial for me. What I'm trying to figure out is, okay, let's say there's a finding of liability and district court answers an injunction, equivalent of a relief, and putting aside the punitive damages, how do class members then collect on their back pay? Well, in this case as the case is now set up, the trial plan that the district court proposed, Walmart's participation in the case will have ended. The district court held that the rebuttable presumption of individual relief that arises from Teamsters essentially now becomes un-rebuttable in terms of Walmart being able to put on its case. Can you just talk plain English? Yes. What would happen? Just tell me, just regular old English. Yes. What would happen? You've gotten to that point. You are now a woman in Kansas City who is working for Walmart. What happens to that person and her back pay? As I read the district court's order, at that point, a special master or someone would sit down with all the payroll records from Walmart and make determinations without Walmart participating as to whether a particular woman's pay was less than the national average that the plaintiff's expert had determined and then make determinations comparing her. So in determining whether or not equitable relief or damages relief predominates, what happens to those claims for back pay? Which side of the balance do we put them on? I think as the panel held in its second opinion, it cuts against B-2 because it's on the side of monetary relief, and because of the individualized natures of these back pay claims, the back pay, I think the back pay alone in this case, because of the nature of the claims predominates. So the full answer to Judge Graber's question is it's not just the punitives. There's also the $1.5 million potential back pay claim. Now, would each person, each woman in the class have to apply for this, or would this be done automatically, or how? Ordinarily, each plaintiff would have a minimal burden of coming forward in a second phase. Here, again, it's not altogether clear from the district court's order, but I don't think anything would have to happen. It would be whoever, there would be some review without Walmart's participation to determine, yes. Sotomayor, are we reviewing the trial plan at this point? Aren't we reviewing only the certification itself? And so the trial plan is preliminary. It could change. I mean, you've emphasized many times that it's without your participation, but that is not set in stone. Isn't the only thing we're reviewing the certification itself? Well, I think, Your Honor, in terms of reviewing the certification order, this Court is faced with an evaluation as to whether there has been a statement of a, at least the outline of a trial plan, the issues that would be litigated and how they would be litigated to ensure that there's a manageable process that would conform to due process. I know you like the idea that Walmart can't participate, but the fact of the matter is it doesn't matter at all for purposes of my question and Judge Grable's question, right? Correct. I know you like that fact very much. I like that fact, Your Honor. But it makes no difference whatsoever. That's correct, Your Honor. The point is they want the money. They come in. They can apply for it and get it, right? That's correct. Whether Walmart participates or not. I'm sorry. I'm sorry. Judge Bergeron had a question. I'm sorry. Was it Judge Bergeron or did you include her?  Go ahead. I'm accompanying you. But in the terms of the problem, yes, Your Honor. Before you move on, is it 1.5 million? If past employees are excluded, is it 1.5 million? Your Honor, I think it may even be. If past employees, all past employees, I don't know. But if it's the panel's second opinion, employees can work. We're not here on the panel opinion. On the date. But now if it's past employees, it would be less, I think, than 1.5. It's about 60 percent of 900,000, isn't it? That's probably about right, Your Honor. That's about 500,000, isn't it? That would be somewhere in that range. It's two-thirds less than 1.5. And here is the question I was going to ask you. You posed an example before of something that you said could be an appropriate B-2 class, and I have a second question after that. But say if you had a plan and you said, suppose they said all women are going to get paid a dollar less than men. But you'd still have to make a particularized determination. You'd have to find out what the women were paying and who were the women who had the jobs, and you'd have to figure out what it is they were going to pay. Isn't this, as to the pay differential, essentially the same? And it would be helpful to me if you could address whether there's a difference with regard to your arguments on the pay differential issue and the promotion issue. As to the pay differential, Your Honor, I think in the hypothetical I outlined, it would be much easier, because you would say were you woman, were you eligible. There would still be a proceeding to determine eligibility as to any back pay. Right. But in terms of the calculation, it would be much easier. Here, because of all the stores, because of the nature of the claimant's excessive discretion, some women, a woman in a store in North Dakota may be getting paid more than her male counterparts, even though the national average. Right. But it would be relatively simple to figure that out. I mean, unless you were going to insist, as it appears that you were insisting at some points in your briefs, that you have to have an individualized determination as to whether each individual person was, in fact, discriminated against, even though there's already been a policy and practice determination beforehand. But if you were going to believe that you didn't have to do that, I don't understand what's so complicated about it. It's complicated. The numbers are big. But it's not more complicated or different than the sort of instance that you were talking about. I think it is, Your Honor, because of the nature of the claim, this notion that it's not the practice that says at the national level that this is our practice, women will be paid less. It's the individualized exercise of the practice. But the liability stage will have taken care of that, because the liability stage would have determined that there is a patent and practice. And they can – I mean, one part that you keep losing sight of, it seems to me, is they can lose that. They can lose. They cannot prove the patent and practice. But if they prove the patent and practice, then why don't you have a patent and practice at that point, which is similar to the one that you're positing? You're right. Well, first, if that's one of the reasons to be cautious in certifying this class, they could lose. And the Supreme Court in the Falcone case made that point. But in terms of the first phase, if there's a pattern and practice, the Supreme Court said in Teamsters, that creates a presumption that an injunction would be appropriate. And the injunction could be sought, yes, but it creates a presumption that there's been a pattern or practice that injured the individual plaintiffs. So if this Court were to say you can't have Phase 2, the Court is changing the law of Title VII. You're changing it to an injunction. Well, first of all, Teamsters didn't say this clearly. But second of all, and I hadn't really focused on this before, Teamsters was not about patent pay. It was not about money. It was about making individualized determinations as to where they were going to slide into a seniority system that was going to affect other people's seniority and other people's livelihoods. So it was something completely different than just manipulating some money. Well, Your Honor, first of all, Teamsters, it's a more difficult enterprise to, in terms of calculating the back pay to a certain extent in a Teamsters-like situation. But case after case, it's not like that. Well, they weren't doing back pay. My understanding in Teamsters, they weren't even talking about back pay. They were talking about seniority, where people were going to – the injunctive relief that was going to give people a different place in the hierarchy. But, Your Honor, I don't think there's any difference in terms of determining whether under Title VII a person has been injured under purposes of Section 706-G in terms of collecting monetary relief. That's in the statute. There's a right under the statute. And as a matter of due process, the Phase I, Teamsters says that just creates a presumption. You can't take Phase I, where there's a pattern in practice and say that entitles individuals to monetary relief or any other kind of relief. It would violate Teamsters. It would violate Title VII. Now, you have to identify who are the women in the jobs and whether they, in fact, were under the average or over the average and something about comparatives. But it's just a question of proof problems rather than of which way you're going to let somebody prove something rather than a substantive decision, it seems to me. Well, I think it's an important distinction, Your Honor. In our system, the defendant has a right to put on their case. And the plaintiff's proposal is that statistics would be used and a rebuttable presumption would be converted into an irrebuttable presumption. That, as Professor Coffey said in his article about this case, and he tends to be fairly pro-class action, he said it's several bridges too far. It pushes Rule B-2 too far and takes away the rights of the defendant. And I think in terms of the B-2 standard, in terms of determining whether injunctive relief predominates, the plaintiffs gave up, waived the easiest path to an injunction. To get class certification, they gave up their mixed motive claim. The 1991 amendments will put in a provision to make it so that if you failed on your damages claim, you could get an injunction. If injunctive relief were the predominant relief sought by the plaintiffs, they never would have given up their mixed motive claim. That's the easiest way to get an injunction. Most of the employees don't work at Wal-Mart anymore. Most of the named plaintiffs don't work at Wal-Mart anymore. The predominant form of relief sought here is punitive damages and back pay. And under those circumstances, B-2 is inappropriate. But would your problems be solved if you had notice and opt out as to the entire case and not just the punitive damages? In other words, what's the difference between the – the whole – your whole argument is that you can't do it under B-2. But the main difference between B-2 and B-3 is notice and opt out. So what – and the judge did say he would give notice and opt out in part. What if he did it in whole? Well, first, Your Honor, the – not only is it notice and opt out, but as Justice Ginsburg said in Amkin, one of the crucial differences is the predominance requirement, superiority, but predominance, whether individual issues predominate over us. But that's what we're discussing anyway. But the standard, that does not – does not apply here because it was B-2. Justice Ginsburg called that a vital prescription. It's far more demanding than the commonality requirement. And so by – by creating a new rule, essentially, by engrafting opt out onto B-2, it's created a – a watered-down version of B-3, which was meant to be – Doesn't the rule specifically provide for the predominance? No, Your Honor. It only provides for discretionary notice. It does not provide for opt out. Opt out is the key here in terms of protecting the due process rights of the absent class members. But Ortiz, Justice Souter's opinion, talked about how it was a mandatory class and you couldn't have a mandatory class with all the – the money involved there. And he – neither Justice Souter for the majority nor Justice Breyer in dissent suggested that just tacking on an opt out right would solve the problem. So what relief does your client seek here? Vacate the certification and instruct the district court to dismiss the action? That – to decertify the class, that would be one option. Another option, Your Honor, I have a proposal. One option would be to vacate the certification order because it was improper under Rule B-2, remand it to the district judge to determine whether B-2 or B-3 can be applied appropriately here in light of the fact that most of the class members are former employees. In light of the fact that vacate cuts against B-2 certification, two principles the district court did not consider the first time around. And to apply the correct standard for evaluating the evidence, which I think has been clarified now by the IPO decision and the hydrogen peroxide decision from other circuits, and to apply those principles to the evidence to determine whether B-2 can be applied. The plaintiffs didn't move under B-3. They mentioned B-3 in their certification brief in about two paragraphs, but their motion did not seek B-2 certification, so Judge Jenkins did not conduct an analysis under that provision. So that would be another option, to look at the – the law has changed significantly if it's been clarified, and the district judge applied the Caridad decision from the Second Circuit and a number of cases that applied that same rule that you couldn't weigh or look at both sides' expert evidence. That – now the Second Circuit has disavowed that decision and others like it. And so I think looking at the correct legal standards, looking at the B-2 and B-3 issues and applying the correct legal standards would be another option. So you're not really challenging the commonality and typicality problems anymore? No, we are, Your Honor. In fact, that – we challenge the commonality and typicality issues both in terms of – let me back up. I think as a matter of law, the plaintiff's expert failed to make the showing necessary because he analyzed this only at the regional and national level, when the theory is that it's the store managers on the ground at the individual stores exercising the store's discretion. The only way to determine whether there's systematic common discrimination occurring is to look at what's happening in the unit where the decisions are being made. I'm not sure why that – why is that the case? In other words, if you're going for an injunction and you're going to be trying to prove that there's this strong Walmart pro-male culture and it translates out, even in an individual case, you'd be trying to show that it isn't just a local aberration. You're trying to show the national policy. And once you focus all your proof at that level, then looking at the effects on the ground, which I take your point, may vary store to store, may be, but you would still have to, it seems to me, in an individual or a divisional or a store lawsuit, be trying to look upstream and point out that this is not just a rogue manager, right? I take your point. It wouldn't be that the plaintiffs couldn't introduce the aggregate – we'd probably challenge it – but the aggregated data that Dr. Grogan introduced at the merit stage to prove some point. But here the point was commonality. And the theory of plaintiffs is that the delegation of discretion has created systematic discrimination where women are paid less than men. But surely they don't have to prove the discrimination now. They have to prove the commonality. Correct, Your Honor. So why – I mean, if, for example, the claim was to go back to your hypothetical – although it's a little too easy. So suppose the claim was that it was man-hardened. And the claim was that every woman has a different pension than every man. And as long as they can establish that that's the policy, they don't have to prove it's a discriminatory policy. They just have to prove it's the policy. Right? So why do you have to prove here more than what's the policy? Well, first, it's not even clear which policy the plaintiffs are challenging as the discriminatory policy. Everyone concedes discretion and subjectivity is not a title VII violation. All right. So maybe they have a problem there. But suppose they've managed to prove it. But your point, Your Honor, the – if you prove the policy, that doesn't prove that it's having a common effect on every one of the class members. That's their burden. But that's their assertion, and they'll have to prove it. And if they don't prove it, they lose. No, Your Honor. So why do you have to prove in advance? There is a policy that they can prove, right, which is whatever the – I mean, there is a – in the record, there is a very – a description about how pay decisions are made, which is fairly specific, and it's a policy. And their assertion is that this policy has a discriminatory impact as well as has a pattern – creates a pattern in practice. And they're going to have to prove that. Now, why do they have to prove any more than that at this stage? Their requirement – the hydrogen peroxide case talks about this. Their requirement is that they must prove that their claim, that that policy has a discriminatory effect on every single one of the class members, can be proven through common proof. And to prove that, they must prove that the discretion is being exercised in a biased way as to – as to women in all the different units where they say the discretion has been delegated. Every case – Is there any Supreme Court case law or Ninth Circuit case law supporting that? Well, I think that the general class action decisions of the Supreme Court support  that just – Watson says that – But that was the merits. At the commonality stage, is there any case law supporting that? Well, the – I mean, there are no published decisions of this Court where the Court has grappled with this question of how you can prove commonality. In the Statton case, the Court was a settlement class where there were no manageability issues, and the Court talked about how there the principal claim was that the centralized policy was discriminatory and there was some local autonomy. Here it's reversed. The policy that's – as far as I can tell, the policy that's being challenged is the delegation of excessive discretion. In other words, the ability of individual managers and regional managers and thousands of store managers to do things – do things differently in their discretion. What about the disparate impact claim? Is that one just per se okay? I mean, their claim is that there's a policy, the subjectivity and decentralization and so on, and there's assertion that it has a disparate impact. The assertion that it has a disparate impact is surely the merits. So why isn't it good enough just to show the policy? Well, I think, again, that proves my point that this case has not been litigated as though injunctive relief is the principal objective. The plaintiffs focused almost completely on their disparate treatment claim, and Judge Jenkins only talked about the disparate treatment claim, which is the only way to get punitive damages. But you can get back pay on the disparate impact, right? Yes, Your Honor. And disparate impact, I think, would be an easier case. So are you conceding that at least that much is certifiable, the disparate impact and the injunction? I'm not conceding that, Your Honor. I think that there would still have to be an evaluation under the proper standards that IPO and hydrogen peroxide reflect and that this Court's Hannon decision had hinted at in terms of whether there is commonality. And the disparate impact claim, I think the district judge on remand would have to look at that again. It really didn't get much attention because everyone was consumed with these damages claims, which were the main impetus for what the plaintiffs were seeking. But I do think disparate impact and mixed motive would have been the easiest path to an injunction, Your Honor. But that has been sort of swept aside because the focus has been on trying to get a big punitive damage award and a big back pay award. But you could get back pay for disparate impact. That's correct, Your Honor. But it would be the you can get back pay. It would still raise the manageability issues if back pay is sought under a disparate impact question, whether individuals are eligible. And we recognize that class actions in Title VII are important and serve important purposes. But again, to go back to Amchem, the courts said courts need to exercise caution both to protect the rights of the absent class members and the defendants and to make sure there's a fair procedure. And B-3 was the provision that was to be used for these types of class actions. If we were to affirm, and it went back, my understanding is it goes back to Chief Judge Walker. Correct, Your Honor. Could he revisit the size of the class? He could revisit the class certification order and the size of the class, but, Your Honor, there's no way this Court can affirm the class certification order. The answer to my question is yes, isn't it? He can revisit the size of the class. He can revisit any of the class. Could he decide whether subclasses are appropriate? He could. Could he modify the temporary trial plan? He has broad discretion to modify things, Your Honor. Could he decertify the class? He could. And, Your Honor, I urge the Court to give clear standards and make sure that if this case is vacated and remanded, that the standards are laid out in a way that create a fair procedure in all reserved areas. Would you like to write an opinion for us? I'm just trying to be helpful. You're into your time. Thank you, Your Honor. Your rebuttal time. Thank you. We'll hear from the other side. Good afternoon, Your Honors. The evidence that the Court accepted below showed, and was undisputed by the other side, that in every one of the 41 regions of Walmart, women got paid less than men, and despite better performance. What Walmart is arguing for on the equal pay claims, which is the vast majority of the claims in these cases, is essentially an alternative that would give these women no remedy whatsoever, because a couple-thousand-dollar claim is the ultimate negative value suit. Folks are not going to get lawyers to do these kinds of cases. I think there's another part of the equal pay claim that's critical here, and I think Judge Berzon pointed out, the Teamsters case was not a pay case. It was a promotion case dealing with seniority issues. And it's critically important that one focus on what exactly is the equal pay case. Walmart had a pay policy which had no objective factors listed whatsoever other than a starting pay level and a pay class designation. Well, it actually did. I mean, they're fairly – I looked at the guidelines. They're fairly specific. They say you're supposed to have such a percentage. It says what kind of evaluation is supposed to result in what sort of increase and so on. And I understand it's all – you know, it can be overwritten, but in order to be overwritten, it has to be approved somewhere up the line. So it's not as decentralized as is being purported. Well, there is a national policy. There's no question about that. And the national policy sets up pay classes. But what the national policy does not do, despite Walmart's argument, it does not say prior experience is a factor in pay. It does not say that even the department you're in is a factor. In fact, what it says is all sales workers are in the same job class and are entitled to the same level of pay. Now, Walmart, fortunately, has a highly detailed electronic personnel management system. And, Your Honor, Judge Kuczynski, I want to address your question about how this system would work. Their system includes every possible objective factor that Walmart itself thinks is relevant. It includes the store you're in, your pay level, your seniority level, your performance appraisal level, the – whether you're part-time or full-time, your status, the weeks of work, every single – Which question of mine are you answering? Well, your question of how a back pay process would work. And I think the point that I'm making here – Again, I know more what an accounting lesson than a lesson on tiles. I really wanted the question of what – how does somebody in the class go about getting paid and how much would that be? I really don't need an accounting lesson. Okay. I understand, Your Honor. The way it works, and I think the trial plan that the court preliminarily approved at this stage of the case is if the plaintiffs establish that there's a pattern in practice or adverse impact that has not been rebutted, then the determination of how much back pay based on the equal pay claims would be based on the only objective data that's available, which is Wal-Mart's – For everyone in the class. For everyone in the class. Now, that doesn't mean – And that's – That doesn't mean everyone in the class gets money. And contrary to what Mr. Petros said – No, I understand. But it is for everyone in the class. It's everyone in the class who is entitled under the model adopted. Now, the parties are going to have a vigorous argument. We've already had a vigorous argument. What are the relevant factors? You're going off – if you really want to answer my question. Sure. The question – but whatever that money is – Yes. In balancing the question of whether or not injunctive relief predominates or monetary relief, which is what we have to do under B-2, that goes on the side of the balance of monetary, not injunctive. And the district court was wrong about that. Actually, if I may respectfully disagree – Well, I'm sorry. I meant to put a question mark just to focus you on what I really want an answer to. So consider that to be a question mark. Let me answer both of the issues. And perhaps one is only mine. The other one is yours, Your Honor. The first question is the model to determine back pay is one that Wal-Mart has every right to argue about, about what's appropriate. We have never argued that there's a one-size-fits-all, that, in fact, the model could take into account store-level differences as a remedy stage. That's his issue. That's his issue. That's what he wants to talk about. But as I said, I don't think it's any more relevant to when you talk than when he talks. Whether they get a chance to talk or they don't get a chance to talk, the question I was trying to get answered is we're trying to make a determination between injunctive relief and monetary relief. So I want to know pretty clearly what it is. I understand injunctive. I know injunction. I've seen them. I know what they look like. So I can sort of get a feel for what it is. I was trying to get a feel of what the other side of the balance looks like. Okay. Let me try to address that. I mean, we know punitive damages go on the other side of the balance, right? Punitive damages? Yes. Let me take them in two pieces. The back pay first. First piece. Let's put this aside. Punitive damages go on the other side of the balance, right? Punitive damages are not automatic B-2, and I think you have to look at the kind of claim that's raised and what other claims are raised. Punitive damages, if any, go on that side of the balance. Well, punitive damages are damages. I accept that. Okay. So let's talk about the questions. Do they predominate in the case? How about back pay? Back pay, I think the unbroken cases by every single circuit, including the Fifth Circuit and Allison, is that back pay is integral to the injunctive relief and that back pay is fully consistent with B-2. And I want to turn to Rule 23's advisory committee language. The question about B-2 and cohesion is whether there is something that could, quote, settle the legality of the behavior with respect to the class as a whole. Back pay, a determination of entitlement to back pay, is exactly that. And that's what the Allison court itself recognized. And interestingly, the Allison court yes. That's pretty simple when you deal with the equal pay claim. But the promotion claim seems to me to have multiple problems. One of them being, what about an injunction with regard to promotion? This hasn't been addressed at all in the briefs, but it seems to me that either you're going to just not have an injunction with regard to promotion, people are not going to get promoted as a result of this case. They're just going to get back pay for not being promoted. Is that it? Otherwise, you're going to have to determine where people are going to end up. And that's going to be a big project. Well, we have sought broad injunctive relief for both the promotion and pay claims. And the trial court found that adopting our position, which would require for the promotion side a meaningful, transparent, objectively based promotion system. Well, that's right. But what about the promotions they didn't get in the past? Well, that turn, the remedy for that is back pay if they haven't gotten it. But they're still going to end up, so they're going to start back just where they were, even though if they hadn't been discriminated against, some of them, they would have been way up the ladder, maybe? Well, I think that's an interesting question about why an individual process wouldn't work. One of the reasons courts have said in promotion cases a formula makes sense is where you have level upon level of discretion, as Walmart did. It's impossible to determine in any individualized process whether somebody is just going to start from where they are. There's not going to be an injunction that helps people who were discriminated against in the past with regard to promotion move up at that point. They're just going to have to move up in due course. Well, I think if you're so – if the question is are we seeking individualized equitable relief as opposed to broad-based injunctive relief, we're not. We're seeking broad-based injunctive relief, which would include affirmative action and transparent, objective standards. And the Court found that that would be very significant and long-term benefit to the individualized process.     And it's a question of how do we get job opportunities. I want to keep the focus on the question about the back pay question. Mr. Siegel, can I ask you a question? Yes. Who decides what goes into the formula? I think the Court decides what goes into the formula. Oh, does the jury have any role here? No, because back pay is an equitable relief. It's up to the Court. So what role does the jury have in this case? The jury will determine whether or not there's a pattern in practice of discrimination, and the jury will determine whether or not there's an entitlement to punitive damages. And it's the only reason the jury's doing that is because of the punitive damages? Because if there were punitive damages, they wouldn't have a jury at all. That is absolutely right. There's no jury trial right for the adverse impact claim. And if the Court were to determine punitive damages were not appropriate, this would be a straight court trial. And it would be one very simple – similar to pre-1991 cases. So is the jury involved in the first phase of the litigation? The jury certainly is. As long as there is ultimately a pattern in practice claim that's tied to a punitive damage claim, because of Seventh Amendment rules, the jury would have to rule initially. And the Court would be bound by any jury findings that overlapped with adverse impact findings, if there were such an overlap. What is the range of options that we have in this case? Is this all or nothing? We either affirm what the district court did or say that it was no good? Because it seems to me that there are lots of ways to slice and dice this that may be different. For example, if punitive damages were found to, you know, go over the edge of predominating, what would we do? Would we just say no class or a class without punitive damages? What are our options? Certainly. And how do we decide among them? I think the Court has a number of ways you can slice this if you feel it's appropriate. First of all, if the Court finds that punitive damages push us over to B-3, the Court could say no punitive damages and certify it and uphold a certification on B-2. In fact, the Metro North case suggested there's a variety of ways you could parse it out. The Court could also find that this case is completely appropriate for certification under the adverse impact theory, which every court below has held is a much easier certification. And that would automatically be back pay and adjunctive relief. The Court could also find that the equal pay claims, because there are no individualized factors that are need to be captured outside of the database, can be fully certified for all the claims in this case. So it's a very complex question. Kennedy. Mr. Seligman, you said there are no individualized factors. Now, in a back pay dispute, one of the issues that is often brought up is whether that employee was, in fact, ready to be fired for other purposes. That would never be seen in the light of day under your proposal. Well, Your Honor, I think we have to look at what the claim is. We aren't making a termination or a demotion claim, but for equal pay, for the equal pay claim in this case, the database captures the performance of those employees. And if Walmart asserts that, something they haven't done below, that women are more likely to be disciplined than men, there's nothing that stops them from offering or suggesting that database be augmented. But if Walmart wants to suggest that any individual woman has a greater absentee record, for instance, they can't prove that. Well, I think it goes back to what they're saying. Unless it's in their database. Unless it's in their database or capturable in their database. But there's no evidence that Walmart has presented that that is a pay factor. In fact, it wasn't even suggested by their expert that discipline or any of those things are an issue. What Walmart is suggesting here is that these class members, and if we prevail on it showing our pattern, they're saying that they should have the right on claims worth a couple thousand dollars to insist on a full-blown trial, and what's the evidence going to be? Walmart does not document their pay decisions other than what's in the database. So essentially what they're suggesting is they want to bring in somebody who may or may not have known or recalled some employee. Some evidence. Gets raises or adjustments every year who's supposedly going to say, years and years later, my guess is I didn't pay this person more for some subjective reason. Doesn't that go to the weight of the evidence? It goes to the question of what's likely to be the most accurate and fairest process. Walmart's process, what they're suggesting, will deny any relief for the vast majority of the class, because one candidly has to admit it makes no sense with claims, small negative value claims, to have individual trials. Let me talk to you. Let me ask you a question about one larger claim. The punitive damage claim, doesn't that depend on the individual actor's reprehensibility when he acts to an individual victim? I think that the punitive damage claim, when you're dealing with a corporation, when you're dealing with a corporation, deals with the state of mind of the corporation. And you'd have to look at the underlying claim. But the state of mind of the corporation here is to let every regional manager do, or every store manager do, whatever he pleases. So it deals with the state of mind of the individual store manager as to the individual employee, does it not? Actually, no, Your Honor. With all due respect, in the Colstad case, the U.S. Supreme Court said, particularly when you're dealing with corporations, it deals with the – whether the corporation itself acted in reckless disregard. And the defense – the defense was to show that that corporation had good – Do you consider it to be reckless disregard with respect to discrimination against women to allow each store manager to make up his own mind? That's excessive subjectivity? Is that your point? No. The point we're making, Your Honor, is that if a jury finds that there was a pattern and practice of discrimination, and as we argue, that Walmart was fully aware through reports to their board of directors, through reports from the field, was aware of that and acted in reckless disregard by maintaining that process, a jury could award punitive damages. And the issue there is not whether an individual woman was injured, because the question is Walmart's state of mind. Well, let me – on the promotion claim, I think the statistics are that only 14 percent of the regional managers are women. Actually, when the case was being litigated, virtually none of the regional managers were women. District managers is more of what you're talking about. All right. Let's take district managers. If there are a certain percentage of women as district managers, let's say 14 percent, does the fact that there's decentralized decision-making that produces that, do you think that's evidence of discrimination against women? Well, I think the – we're not – the argument we're making is the evidence of discrimination from women, number one, starts with the pattern itself that shows that women are disproportionately promoted. Interestingly, Your Honor – Let me take you to another situation where women are disproportionately represented. Yes. The Senate of the United States, the House of Representatives of the United States, the California Assembly. Is it your idea that the Constitution of the American system of election is discriminating against women in the selection of those positions? No, Your Honor. That isn't our claim. No, I would think so. But I think the facts in this case are a little – are a lot different. Probably different. If I could elaborate, Your Honor, the facts in this case on the promotion system at Walmart is they set up a system where there was no application process. There was no job posting. Other than the most minimal qualifications, there were no criteria. People say that about the House of Representatives. Well, that's a voted in. They're not selecting people. The people actually get some input in that. But this is not – the employees aren't getting any input on the promotions. But the store managers are. You've been focused on back pay and said promotion is part of that. Now, Judge Brezan was trying to raise that question, too. On the promotion – Yes. The failure to promote part of your claim, how do you establish those damages or entitlements to back pay without getting into the individualized circumstance? Yes. We acknowledge, first of all, it is a tougher question than equal pay, because in the equal pay side, one presumes everyone wants an equal pay. There's no issue of interest. It's strictly a question of whether you got it or not. For promotion, though, I think what the courts have recognized, and most recently the Fifth Circuit in the McLean v. Lufkin case, is where you have essentially a non-system where it would be impossible with any kind of realistic exactitude to determine who would have been promoted in the absence of discrimination. There's a several-step process. The first step is, is there liability? And I think the evidence here, a jury could find there's liability based on the disparate promotion rates. Okay. And if you get past that, then the court is really acting as a chancellor of equity at that point, which is you take into account what you can take into account. Well, but then at that point, is Walmart at the table to decide whether or not this person gets $2,000 or $100,000? Walmart is certainly at the table in order to argue what are the appropriate factors to take into account. Our argument, though, is an individual-by-individual hearing would be a meaningless process, because essentially what it would be is level upon level of speculation where they have no records, where they have no criteria, no standards. And so if liability is found, what is the way that gives the most substantial justice? And we think that's the way. So every woman in the class is going to get a promotional factor in the monetary award based on failure to promote? I think the Court can refine and limit promotion in a variety of ways, and we've suggested a couple. First is they could look at the factors that are correlated to successful people being promoted, a certain level of performance, a certain type of experience, and limit the class to that. They could require a claims process where individuals file under penalty of perjury a statement that they would have been interested in some kind of a process. The Court is not powerless. The other thing the Court could say is require women to show some objective contemporaneous documentation. So I don't think the question is all or nothing. At this stage of the class certification process, the parties were not focused on every detail. But the case law suggests that the Court, when it's addressing the back pay in this kind of situation, has the duty to make the most substantial justice possible, taking into account what data there is. The alternative, which is Walmart's alternative, is where there's clear liability to give no remedy. When is the dollar amount fixed after this Phase 2 process? Or there's reference in the briefing to a lump sum, and counsel for Walmart said that we're not even at the table. It's just dividing up a pot that's been preset. How does that amount get fixed without there being some sense that, you know, some women are entitled to it and some are not? Well, I think the amount, first of all, everybody's at the table in that discussion as to the Court. And what we argue to the Court is what is the appropriate factors and data to take into account to determine what the aggregate loss back pay is on the pay and the promotion claims. Once that figure is determined, then the Court, for the pay part, it's simple, because that model will determine what the loss is for women who earned less than they should have under this model. For the promotion claim, then the Court is addressing the more difficult question of determining how that money should be distributed. What do you make of or what is your response to Mr. Buttock's argument that, look, your claim is that there's a national policy which then allows discriminatory decision-making at the store level. And you really can't decide this on a national basis. You have to look store by store. Some stores may take advantage of the national policy to be discriminatory. Some may not be. Some may discriminate against men rather than women. It's possible, right? So what's your response to that particular argument? Well, there's several responses. The first response is ---- Why don't you start with your best? I'll give you my favorite one. My favorite one is under the case law ---- I didn't want your favorite one. I want your best one. My best argument, Your Honor. Okay. My favorite one is my best argument, Your Honor. And that is where the evidence shows that there is a national policy and where you have evidence of movement of employees between stores and commonality throughout the system. But that's just a structural thing. Maybe it would be helpful to me, maybe to other people, if you could say in 25 words or less what is the specific employment practice that you're challenging. Well, 25 words is a challenge for any lawyer, Your Honor, but I'll do my best. The specific employment practice in this case ---- The practice is? The practice is uniform delegation of discretion for the pay claims to store managers in a system that has a common culture and common training. Well, those are ---- you've just now said two things that are in their ---- by definition inconsistent. That is, the delegation and a central culture thing. Well, actually ---- What's the central culture? I mean, obviously the corporation surely has got a headquarters that thinks and it wants there to be a Walmart culture. Yes. What's the culture that implicates Title VII? Well, the culture here, and I think there was evidence about this ---- And that is in common among all 1,500 of these people. They inculcate their managers from day one. They move them around fungibly. It really is very hard to see the connective because apparently this has to do with things that don't particularly have anything to do with hiring or promotions or anything else. The culture seems to be things like, you know, saying the Walmart song in the morning and things like that. It was very vague and I couldn't really see the connection between the culture and the employment practices. Well, I think when you have a level of uniform subjectivity and oversight, because actually what they ---- Walmart doesn't let the managers off to do whatever they want. They're visited on a weekly basis. Well, that seems to me to be key. The fact is that it isn't so. I mean, it is subjective but capable of being supervised and supervised to some degree so that it is, in its essence, there's acquiescence in whatever's going on because it's knowable and to some degree it's known. Well, in fact, the evidence shows it is known at every step. And Walmart, in fact, they have this process called management by exception. If pay is over 6%, it gets kicked up the line for approval. Every promotion is reviewed at higher levels. This is not Walmart didn't know what was going on. This is conduct that was approved and acquiesced for years, and they've known exactly what the impact of this process is. Where in your structure I think we're trying to find out is where does the sexism come in? Delegated sexism, as headquarters know, that in this delegated structure that the natural course of events throughout the country is that men will be favored over women. Well, I think you ought to separate the pay from the promotion. The pay process is one where every pay decision that goes beyond a minimal pay adjustment is approved by the district level and above. It tells them who gets it, what the gender is. They're very aware of exactly what's going on. For the management employees, pay decisions are all made in the home office. For the promotion process, for the vast majority of the promotion decisions in this case, they're not done at the store level. They're done up the line. The district manager makes the decision about who goes into management. Regional managers make the decision about anybody above that. And is there any possibility that you could win this case on patent and practice, but not on disparate impact substantively? I'm trying to figure out where the disparate impact thing fits into your claim. I think the disparate impact claim is a simpler claim because it's primarily a statistical. And almost impossible not to prevail on if you prevail on the patent and practice. Yeah. I think a jury, the Court would have to find that either there's no impact, which would if there's no impact, that certainly undermines your pattern, or that there's a business necessity established. That's the one way you might win on it. Right. Or you might lose on it. Right. I have two practical questions. One is, what about the opt-out? Are you objecting to the opt-out, the notice of opt-out, insofar as it's been ordered? And why shouldn't we just broaden it? Well, we proposed the opt-out. And for a very simple reason. Why don't we broaden it to include the back pay? I'm sorry? Why shouldn't we broaden it to include the back pay and, therefore, by mitigating some of the objections to the damages as predominant? It's not clear to me that the opt-out would not include back pay. I think that the Court we proposed an opt-out in this case. I mean, the Court could notice hasn't gone out whether you opt-out for the whole case or just for punitive damages is not totally clear, I think. We proposed the opt-out primarily because we were not seeing compensatory damages. And consistent with cases including Molsky, we thought under those circumstances to protect the class, they should have the option to seek that if they would. So you don't object to a broad opt-out, a broad notice and opt-out? Absolutely not. We don't object. And, frankly, I don't think Walmart objected below to an opt-out. And then my last question is with regard to one thing I don't understand is if you have how can you have a punitive damages trial before the back pay trial? Because don't you have to somehow anchor the punies in the back pay and you're not going to know the amount of the back pay? So what's the jury going to do? Well, let me, first of all, the Court didn't say when, how we do that. There is nothing that would preclude at stage one us putting in evidence to show the degree of harm to the class. In fact, frankly, the models that we would put in to establish pay disparities could easily be translated into a way so the jury knows what the relative amount of harm is. But the cases don't require that the damages be determined before punitive damages, so long as there's ultimately a proportion. You know, interestingly, the Fifth Circuit, since Allison, has ruled that back pay, excuse me, that punitive damages do not require any proof of compensatory damages. In fact, they actually in the Abner case said you don't have to prove any damages to get back pay. We're not suggesting this Court has to go that far, but the jury can make a punitive damage determination and we would certainly be happy to present to that jury evidence of harm and potential harm so they'd have some way to consider that. I mean, the jury could fix an amount of punitive damages? Yes. Before the total amount of back pay or lost pay is determined? Well, I think the case law, particularly the Abner cases and other recent cases, have said that, and the EEOC itself argues in their amicus brief, that punitive damages under Title VII do not need to have a proportion to actual damages. At what point in this process would the victims who recover back pay, would they get their share of any punitive damage award, and how would that be determined? Well, that would be after, you know, I think that no monetary distribution would happen until the whole case was resolved. So the jury would issue a judgment on pattern and practice and punitive damages. The Court would determine back pay. And the Court suggested below that back pay would be done in proportion to the actual – punitive damage would be done in proportion to the relative back pay. So there would be a ratio for individuals. I heard you say the Title VII doesn't require a ratio between back pay and punitive damages. A woman who receives $100 back pay could get $300,000 punitive damages, and that wouldn't offend the State Farm case or the Gore case or anything else. The due process limitation, which requires a 9-to-1 maximum amount between compensatory and punitive damages, doesn't apply in this case. The argument the EEOC has made, and some courts agree with this argument. I understand. But what do you say? We don't think you have to go that far, because we think that the back pay in this case will bear, and the Court below will bear, a reasonable ratio for it. But I think that it's important when you ask. But if that's so, if that's so, don't you have to take into consideration the reprehensibility with which a particular person acts towards a particular victim? Because one thing could be some benign person who doesn't realize he's discriminating against women, and some person who might be a store manager would be a misogynist who is a hate-filled person against women. The latter requires more punitive damages than a terrorist, and that would require an individualized hearing, would it not? But, Your Honor, we're not suing individual store managers. The punitive damage claim here is for maintaining a pattern and practice of discrimination. So all you care about is what the central office has. If the jury believes that Wal-Mart maintained this system in reckless disregard of the rights of its employees. And the only mental element involved would be what the CEO has in mind. Well, it's what the corporation has under the Kolstad case. And that would be the way. In the minute remaining, I don't know that I've ever got an answer to my question, but your favorite answer. Your favorite answer. Which one? This is the question about an allegation that speaks to discrimination at the store level and yet compensation at the national level. This is Mr. Boutros' point. And you were going to tell me about transfers between the stores and then I lost track of where you were. The cases have made it clear that aggregated data is more probative or can be more of managers throughout a system. The judge made specific findings that that was true in this case. But his point, which really I want you to answer, his point is, but you've alleged discrimination only at the store level. And it's understandable that you didn't allege discrimination at every store. You said you've got a national policy that allows some stores to discriminate. So that's his point. How can you have compensation or back pay at the national level when you have discrimination? Do some stores have discrimination? Some stores don't have discrimination. I think the argument that we made, not that it's just discrimination at the store level, but it's a system-wide process. And the evidence shows that it's a system-wide process here. Interestingly, Walmart itself didn't do a store-level analysis. But your expert only says it allows for discrimination. It doesn't say there was universal discrimination. Are you maintaining that there was discrimination against women at every store? We're maintaining that there was a pattern of discrimination. There could be exceptions. Teamsters recognizes you can have a pattern of practice with exceptions. But our burden, which we embrace, is to show that the common operating procedure was discrimination. And we think that the expert we had showed that in every single region there was that pattern. So you could have a woman in a store where there was no discrimination against women still recover based on national standards? If that theoretical situation existed, that is not what the model would be. And the parties would discuss that because our model for back pay would take into account relevant factors. So by no means at this stage. There are so many abstractions, I have no idea what you just said. Okay. What I'm saying is. I'm talking about a concrete question. Our model proposes an individualized assessment when we get to remedy. And by no means would Walmart be precluded from arguing that if it could show that there is an exceptional store where women got paid more than men. I don't know where that store is. In fact, our expert found that in every region women were paid less than men. But if there was such a store, Walmart would not be barred from arguing at the remedy stage that that's an appropriate factor to take into account. Okay. Thank you. Ms. Woodlison, you had about. There we go. That's what you had. Thank you, Your Honor. Let me begin with that. The clock knows best. Let me begin with that last point. Because Walmart's expert submitted a store-by-store analysis, not a subunit analysis. Everybody keeps using that term. A store-by-store analysis that showed at 90 percent of the stores, there was no statistically significant disparity between the pay for men and women. In the 10 percent, women were paid. Explain in a sentence or two, just because I can't. Maybe it's just not explicable, except to statisticians, how you could have these two different results, assuming they're both accurate for what they are. The simplest explanation is there could be stores where there is concentrated, where women are paid much more than men or men are paid much more than women. But I thought the plaintiff's expert controlled for different stores. Only in terms of whether the pay was higher or lower at that store than the averages. So he never conducted a store-by-store analysis. And our experts, as the district judge said, that's fine. You could win. But he found himself barred from considering our evidence on the commonality issue. And it goes right to commonality. If 90 percent of the stores show no disparity, there can't be a way to prove discrimination in a common way on a class-wide basis. Within that 10 percent, women were paid more at some of the stores than men on average. And so it's a failing of proof, whatever standard is applied. And to go back, Judge Hawkins, to your point in terms of other things that could be done, we are not saying you can never have a class action. We're not saying you couldn't have – if you found a store where there was a disparity in the plaintiff's said evidence and could meet the standards, they might be able to certify a class. And so this notion that we're suggesting some theory that would frustrate Title VII is incorrect. What is your answer to the question I asked opposing counsel about the range of options that this Court has? Is this an all-or-nothing proposition, decertify or approve what the district court has done, or do we have the ability to differentiate, for example, between the pay claims and the promotion claims, between injunctive and back pay relief on the one hand, punitive damages on the other? Can we make those distinctions at this level? I think at this level, Your Honor, I don't think it's an all-or-nothing proposition. But I think that – You do or you don't? I don't. But I think – but I say that with the following, that I think if the Court vacated certain points of the class or parts of the class and ruled that errors had been made, then the proper course would be to send the whole case back to Chief Judge Walker and have him take a look under the proper legal standards at the whole picture and the whole range of options. And so I think there are many options open to the Court. With respect to the punitive damage claim, Mr. Sullivan is incorrect about what this Court has held. In White v. Ford Motor Company, the Court held that the jury must know what the compensatory And the plaintiffs have just cast that aside. The EEOC even argues that due process doesn't apply to Title VII cases, which is incorrect. And Kolstad sets a higher standard. It's not just that the corporation – you look at the corporation. First, you have to show that an individual act or acted with recklessness or malice, evil intent towards the plaintiff. Then, if the company gets to show that they had a policy of antidiscrimination that was in good faith implemented as to that plaintiff. So it would be completely unmanageable to have a fair proceeding on punitive damages. And back pay as well. It's monetary relief that creates individual issues. Thank you, Your Honors. Thank you, counsel. A very fine argument. Case and argument is canceled, is it? We are adjourned. Thank you.
judges: Kozinski, Reinhardt, Rymer, Hawkins, Silverman